Nathan W. Drage, #5194
Nathan W. Drage, P.C.
4766 Holladay Blvd.
Holladay, Utah 84117
Phone: (801) 273-9300
Facsimile (801) 273-9314
Attorney for Plaintiffs

FILED
U.S DISTRICT COURT

[illegible] P 3: 10

DISTRICT OF UTAH

[illegible]
[illegible] CLERK

## IN THE FEDERAL DISTRICT COURT OF THE UNITED STATES

## IN AND FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SUPERWIRE, INC., a Nevada corporation SUPERWIRE TELECOM, INC., a Nevada corporation, and James Truher, an individual residing in California. | COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF |
| Plaintiffs, | REQUEST FOR JURY TRIAL |
| vs. | |
| ASCENDUS CAPITAL MANAGEMENT LLC, a Utah Limitied Liability Company, RICHARD SMITH, an individual, ROGER TAYLOR, an individual, Scott Nauert, an individual and Does 1 through 20. | Case: 2:08cv00421 Assigned To : Wells, Brooke C. Assign. Date : 5/27/2008 Description: Superwire et al v. Ascendus Capital Management et al |
| Defendants. | |

COMES NOW the Plaintiffs Superwire, Inc., Superwire Telecom, Inc., and James Truher,

and by and through their attorney, Nathan W. Drage, and for valid causes of action against the

Defendants, state, allege, and claim as follows:

### I. JURISDICTION AND VENUE

1. Plaintiffs Superwire, Inc. is a Nevada corporation and Superwire Telecom, Inc. is a

California corporation.

2.  James Truher is an individual and a resident of Orange County, state of California.

3.  Defendant Ascendus Capital Management LLC is a limited liability company organized under the laws of Utah.

4.  Defendant, Richard Smith, is a resident of Utah County, Utah.

5.  Defendant Roger Taylor is a resident of Washington County, Utah.

6.  Reserved.

7.  Plaintiffs alleged that there are other persons and entities who have participated in the wrongful acts alleged herein and reserve the right to name such persons as additional facts become known to plaintiffs.

8.  The contract and agreements that are the subject matter of this Complaint were executed in Salt Lake County, Utah and Orange County, California.

9.  The actionable conduct of Defendants that are the subject matter of this complaint have occurred, in part, within Salt Lake County, State of Utah.

10.  The matters in controversy exceed the sum of Three Million  Dollars ($3,000,000), exclusive of interests and costs.

11.  The controversy itself is between completely diverse citizens of different states.  This Court has jurisdiction.

## II.  GENERAL ALLEGATIONS

### OVERVIEW

12.  Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 11 as though fully set forth at this point.

13.  Upon information and belief Defendant Richard Smith has, during the time periods relevant to the causes of actions of this complaint, functioned as managing member or representative

of Defendant Ascendus Capital Management LLC.

14. Upon information and belief Roger Taylor has, during the time period relevant to the causes of actions of this Complaint, functioned as a managing member or representative of Defendant Ascendus Capital Management LLC.

15. Defendant Ascendus has had other members and/or agents and representatives who have acted on behalf of Ascendus in furtherance of the tortious schemes described in this complaint and may be added as defendants at a later date.

16. Plaintiff Superwire, Inc. is a publicly-held corporation currently traded on the over the counter "Pink Sheet" market under the symbol SUPI.PK.

17. Plaintiff James Truher and others founded Superwire in 1998 and Superwire Telecom, Inc. in 2004. Truher has served as Director, CEO and Chairman of those companies.

18. In about September 2006, James Truher was introduced to Defendants Ascendus, and Richard Smith.

19. Defendant Richard Smith represented to Mr. Truher that Ascendus, Smith, and his business associates have vast financial and business resources with which to fund Plaintiff Superwire, its operations and business.

20. Smith also stated and represented to Mr. Truher that Smith's partner Roger Taylor is a multi-millionaire and heads up a hedge fund with over $100 million in assets.

21. Smith also stated and represented to Mr. Truher that Smith has substantial experience in investing and operating businesses, including public companies.

22. Defendant Roger Taylor represented to Mr. Truher that Ascendus, Taylor and his business associates have vast financial and business resources with which to fund Plaintiff Superwire

3

and Superwire Telecom.

23.  Taylor also represented and stated to Truher that Taylor heads up a hedge fund with over $100 million in assets.

24.  Through Smith and Taylor, Ascendus represented and stated to Truher that Ascendus has vast financial and business resources with which to fund Plaintiff Superwire and Superwire Telecom.

25.  Defendant Ascendus is actually a business "front" and the alter ego of Defendants Smith and Taylor whereby they conduct fraudulent financial, business and stock transactions.

26.  In October 2006, Defendants Ascendus, Smith and Taylor proposed to Plaintiff Superwire that it restructure the company "in order to maximize the benefit to the Company and its shareholders of new business opportunities that are currently under development." (See Exhibit A, paragraph 1)

27.  Based upon the representations and statements of Defendants Ascendus, Smith and Taylor, Plaintiff James Truher entered into an agreement ("the Agreement"), prepared by attorney Robert Alsop, with Ascendus, effective October 17, 2006.  (See Exhibit A).

28.  Pursuant to the Agreement, Defendant Ascendus represented it would, and agreed to, perform the following:

a) Arrange for Superwire to enter into new lines of business (Exhibit A, paragraph 2);

b) enter into relationships with new customers for the purpose of increasing the customer base and range of products offered by Superwire (Exhibit A, paragraph 2);

c) Prepare appropriate disclosure documentation and arrange engagement of a broker-

4

dealer to raise a minimum of $3 million in capital for Superwire (Exhibit A, paragraph 2).

d) Retire Superwire's $1.5 million in debt (Exhibit A, paragraph 3).

29. Also pursuant to the Agreement, Mr. Truher was to remain as a director and the shareholders participating pursuant to the Agreement retained the right have three (3) persons of their choosing to serve as the Board of Directors and Ascendus agreed to vote in favor of such choices.

30. Defendants led Plaintiffs to believe that following the transaction and a reverse split of the Superwire common stock, the stock would trade at about $10 per share.

31. Also pursuant to the Agreement, Ascendus was to "rescind" the transaction and return any and all shares if Ascendus failed to complete certain specifics acts for the benefit of Plaintiff Superwire.

32. Ascendus failed to complete the agreed upon specifics acts.

33. Ascendus failed, as agreed to, to "rescind" the transaction and return any and all shares by January 31, 2007.

34. Defendants Ascendus, Smith and Taylor falsely stated and led Plaintiffs to believe that the stock of Plaintiff Superwire would trade at $10 per share after a reverse split, as specifically referenced in the Agreement, but even after the reverse split the stock never traded near that price.

35. Throughout the period in which Ascendus failed to perform, Defendants Smith and Taylor continued to make, on almost a weekly basis, false, misleading and lulling statements and representations to Plaintiffs that funding of Superwire and Superwire Telecom by Ascendus was imminent.

36. Defendants Ascendus, Smith, and Taylor made these statements in an effort to lull Plaintiffs into a false sense of security with regards to the conducting of corporate business and the

5

financial future of the Plaintiff business entities.

37. In reliance of their representations and statements regarding their commitment to assist Superwire to properly manage its corporate documents, Truher caused the corporate records of Superwire to be sent to Defendants Ascendus, Smith and Taylor.

38. Defendants Ascendus, Smith and Taylor continued to falsely lead Plaintiffs to believe that the Superwire business was progressing, while what was actually happening was Defendants Ascendus, Smith and Taylor were positioning themselves to issue securities in violation of state and federal securities laws.

39. In addition to false representations about raising capital for Plaintiffs Superwire and Superwire Telecom, Ascendus falsely represented and stated to Plaintiffs that the Defendants would improve management and reliability of the corporate affairs of Superwire by preparing necessary corporate documents for duly authorized signatures.

40. Defendants Ascendus, Smith and Taylor failed to provide such necessary documents to allow Plaintiff Superwire to properly effect corporate business. Almost all documents prepared for Superwire management were either improper or ended up being forged by Defendants Smith and Taylor.

41. As a result of their completely reckless and irresponsible mishandling of the "corporate" documents, Defendants Smith and Taylor continued their journey of undisclosed and unrestrained fraudulent activities that would continue over the following year and a half and result in the embezzlement of somewhere between $3 million and $4.5 million.

42. Also as a result of their mishandling of corporate documents, a resignation of James Truher as a Director was never prepared by Superwire corporate counsel and signed by Mr. Truher.

6

43. Michael Heil was subsequently appointed to the Board of Directors and, through subsequent ratification of Mr. Truher as Director, continues to serve as a Director and CEO of Plaintiff Superwire.

44. James Truher, working with Michael Heil, has been conducting an internal investigation into the deceptive and fraudulent activities of the Defendants.

45. Directors James Truher and Michael Heil have gathered evidence sufficient to reach an initial and reasonable conclusion that the Defendants have engaged in fraudulent conduct and that in pursuit of their scheme to defraud the Plaintiffs and their Shareholders, have engaged in misrepresentations of material fact to induce action or inaction on the part of Plaintiffs or their agents and representatives, and have forged corporate documents and embezzled between $3 million - $4.5 million to cover up a Ponzi scheme emerging from other failed business ventures and disgruntled investors.

46. Reserved.

## III. GENERAL ALLEGATIONS

### INITIAL ACTIVITIES OF 2007

47. Plaintiff realleges and incorporates the allegations previously alleged and as set forth to this point.

48. Initially, the true purpose of Defendants in causing Ascendus and Plaintiff Superwire to enter into the Agreement was to further a fraudulent scheme by Ascendus, its members, agents and representatives to obtain directly, or indirectly, "free trading" shares of common stock of Plaintiff Superwire and sell those shares for their own personal financial benefit without any care or concern for the true business development of Plaintiff Superwire.

7

49. To accomplish their goal of selling stock that would not benefit, and actually damaged, Plaintiff Superwire, Defendants led Plaintiffs down a road of high expectations and promised performance, only to be followed by story upon story and lie upon lie in an incredible unbroken chain of deception.

50. With their initial deception completed by the execution of the Agreement in October 2006, the Defendants had to engage in a series of acts that led Plaintiffs, and management and shareholders of Plaintiffs, to believe Defendants possessed substantial financial resources to develop the business of Plaintiff Superwire, when the true intent and facts were that the Defendants just wanted to gain control of any Superwire stock possible.

51. Defendants' goal of gaining control and possession of such stock was at least two-fold: 1) to secretly sell Plaintiffs' securities for their own improper financial benefit and economic purposes, and 2) to use to pacify their investors in other fraudulent schemes.

52. Defendants have engaged in a series of transactions that act as a Ponzi scheme, whereby new money and assets acquired by fraudulent means are used to pacify, for a period, prior dupes of their fraud.

53. In pursuing their fraudulent schemes, Defendants made material misrepresentations to management of Plaintiffs Superwire and Superwire Telecom, as well as other persons not associated with Superwire or Superwire Telecom.

54. Defendants were not funding Superwire, but instead creating corporate documents whereby Superwire shares were issued and restrictive legends improperly removed.

55. From the date of the Agreement through November 2007, Defendant Smith, in conspiracy with Taylor, caused the issuance of 4,900,000 shares without providing Superwire with

8

any reliable documentation as to why those shares were issued.

56. Furthermore, "Board Consents" were utilized in two of those issuances which purported to be signed by James Truher. Mr. Truher did not sign those consents and the signatures are a forgery by Ascendus, Smith, and Taylor in conducting their fraudulent schemes.

57. In April 2007, Defendants Ascendus, Smith and Taylor provided attorney James Barber with false information to obtain from Barber an opinion letter regarding the ownership and tradeability of certain shares originally issued to a business known as Entrata.

58. The Entrata shares were returned to Superwire for cancellation years before the October 2006 Agreement and was in a box of documents sent to Smith.

59. Upon finding the Entrata shares in the box of documents, Smith devised with Taylor and Matt White as scheme to fraudulently take control of the shares (which were to be cancelled), make them "free trading," and sell them on the open market.

60. Utilizing the fraudulently induced Barber opinion, Smith caused the shares to be transferred to Matthew White, who in turn wrongfully aided and abetted Ascendus and Smith in the scheme to defraud Superwire and its shareholders.

61. From October 2006 through April 2008, on information and belief, Defendants fraudulently sold hundreds of thousands of shares and wrongfully received proceeds in an amount to be discovered hereafter.

## IV. GENERAL ALLEGATIONS

## MISREPRESENTATIONS TO MR. HEIL

62. Plaintiff realleges and incorporates the allegations previously alleged and as set forth to this point.

63. In spring 2007, Michael Heil, President and CEO of Ad Systems, Inc., was introduced to Defendant Richard Smith by Scott Nauert.

64. Defendant Smith represented to Mr. Heil that he had substantial abilities and bragged about his financial resources world-wide.

65. Smith further represented and stated to Mr. Heil that he had substantial experience and power in the stock market and specifically told Mr. Heil "I can make this stock go to $10 at any time I want and keep it there."

66. Mr. Heil was also introduced to Roger Taylor by Scot Nauert.

67. Scott Nauert represented and stated to Mr. Hile that Roger Taylor is "an Ascendus guy," a "stock guru," extremely rich, and manages a $200 million fund from his mansion in St. George, Utah.

68. Ascendus, Smith, Taylor and Nauert, represented and stated to Mr. Heil that because of their financial abilities and prowess, Superwire is financially solid and capable of funding Superwire so that it could pay to Mr. Heil's company $500,000 to build telecom systems and sustain the company with $60,000 per month.

69. Ascendus, Smith, and Taylor also represented and stated to Mr. Heil that Taylor has a brother in law, Jeffrey Roylance, who used to be a "big broker in San Francisco," works for Google in Asia, and can arrange for Google to buy Superwire or its business for over $1 Billion.

70. Subsequently, Mr. Heil did meet Mr. Roylance in Salt Lake City, but nothing ever came of the "sale to Google."

71. Based on his representations, Mr. Heil was induced to execute an Option Agreement whereby Superwire could purchase the controlling interest of Ad Systems.

10

72. During the following three weeks Defendant Smith made additional representations to Mr. Heil regarding the funding that was imminent and would be provided by Ascendus, Smith and Taylor.

73. Based upon Defendant Smith's additional representations, Mr. Heil executed a Consulting Agreement effective August 22, 2007.

74. During August 2007 Mr. Heil worked on a business transaction between Superwire Telecom (not Superwire) and Time Warner Cable.

75. As a result of the negotiations by Mr. Heil and his representation of Superwire Telecom, Time Warner was to pay Superwire Telecom $3 million.

## V. GENERAL ALLEGATIONS

### FUNDS EMBEZZLED

76. Plaintiff realleges and incorporates the allegations previously alleged and as set forth to this point.

77. In September of 2007 Plaintiff Superwire Telecom was to receive $3 million from Time Warner pursuant to a contract, negotiated by Mr. Heil, between Superwire Telecom and Time Warner.

78. As far as Mr. Heil and Mr. Truher knew, the Time Warner check would be delivered directly to Superwire Telecom.

79. As part of their ongoing scheme to defraud Plaintiffs, and consistent with their defrauding of previous investors, Defendants Ascendus, Smith and Taylor conspired to fraudulently steal, convert and embezzle the $3 million Time Warner check.

80. As part of their scheme they again obtained the help of attorney Robert Alsop. How

11

much Alsop knew, and when he knew it, remains to be determined through discovery.

81. Alsop had been brought on as counsel to Superwire after the October 2006 Agreement.

82. Alsop had previously represented, and continued to represent, Defendants Ascendus, Smith and Taylor while at the same time representing Plaintiff Superwire.

83. In September 2007 Plaintiffs were informed that the \$3 million check from Time Warner had been sent to the law firm of Robert Alsop.

84. Neither Michael Heil nor James Truher authorized Alsop to receive the check.

85. How Alsop received the \$3 million Time Warner check is still a mystery.

86. Alsop contacted Mr. Truher and informed him that he had the check and that it needed to be deposited.

87. At the request of Defendants Smith, Taylor and Ascendus, and in furtherance of their newly hatched scheme to embezzle the Time Warner funds, Alsop advised Mr. Truher to execute a document allowing the \$3 million Time Warner check written to Superwire Telecom, to be deposited into a NON-Superwire Telecom account.

88. Because Mr. Truher voiced substantial concern of this type of action, Alsop assured Mr. Truher that the check would be deposited into a "Superwire" account.

89. Defendants Ascendus, Smith and Taylor assured Mr. Truher that the Time Warner check needed to be deposited into a Superwire account to develop the business of Superwire and pay Superwire debt obligations that were referenced in the 2006 Agreement.

90. Defendants Ascendus, Smith and Taylor, along with clearly conflicted attorney Alsop, represented and warranted to Plaintiffs that the check would be deposited into a "Superwire" bank account.

12

91. To induce Plaintiffs Superwire Telecom and Truher to NOT deposit the check into a checking account of Plaintiff Superwire Telecom, Defendants Ascendus, Smith and Taylor caused attorney Alsop to send a false and misleading letter to Truher stating that the check would be deposited into a "Superwire" bank account. Contrary to what was represented, the check was NOT deposited into a Superwire bank account, but instead fraudulently deposited into a bank account owned by Defendant Ascendus.

## VI. GENERAL ALLEGATIONS

### 2008 DEMAND BY SUPERWIRE TELECOM

92. Plaintiff realleges and incorporates the allegations previously alleged and as set forth to this point.

93. Based upon the fraudulent representations and statements of Defendants Ascendus, Smith and Taylor, and attorney Alsop, regarding the deposit of the $3 million Time Warner check, James Truher was unaware that the funds had in fact been deposited into a bank account owned by Defendant Ascendus.

94. With their deception still in place and growing with the help of attorney Alsop, Defendants led Mr. Truher to believe everything was "great" with regards to the financial condition of Supwerwire and Superwire Telecom.

95. Subsequently, Mr. Truher became concerned about the Time Warner funds.

96. Defendant Smith was supposed to arrange for certain payments out of a Superwire account (believed to be holding $3 million), but such payments did not occur.

97. Mr. Truher did what he could to understand what had happened, what had not happened, and why.

98. Likewise, Mr. Heil became more involved in the matter and worked with Steven Spencer to get an accounting of the $3 million.

99. Checks written to the Superwire operating account were bouncing, which did not make sense to Mr. Heil. If the $3 million was in the bank, there should be no problems.

100. At this time Defendants Smith and Taylor represented and stated to Mr. Heil that to properly develop as a public company Superwire needed to become a "fully reporting" company and get its "house in order."

101. Despite the lip service by Defendants Smith and Taylor, Mr. Heil and Mr. Spencer were not able to obtain any meaningful information regarding where the money went. Even the Plaintiff's attorney, Robert Alsop, was not helping in uncovering what happened to the money, which further underscores his conflict of interest, and sadly, implicates him directly.

102. Eventually, Taylor told Mr. Heil that "I am going to take this thing over to make sure it is properly funded. Richard Smith is an idiot. He can't add, he can't do anything."

103. Defendant Taylor also told Mr. Heil that he had $500,00 of the $3 million on deposit in Mr. Taylor's investment fund. Why Taylor would have Superwire Telecom funds in his account is also a mystery.

104. When Plaintiffs requested those monies held at Taylor's fund, Taylor further made fraudulent statements by stating that withdrawal of the funds required a 90 day withdrawal "request period."

103. From mid-October to through January 2008, Mr. Truher was falsely told several different stories about the money still being in the bank and ending with the promise to get things done - including an accounting of the funds.

14

104. As his attempts failed to get basic information about where the $3 million went, Mr. Truher became greatly concerned by the conduct of Defendants Ascendus, Smith and Taylor.

105. Appalled by their irresponsible failure to provide any meaningful information regarding the $3 million, Mr. Truher caused Plaintiff Superwire Telecom to retain independent legal counsel to make demand upon Defendants Ascendus and Smith for certain things, one of which is an accounting of the missing millions that belonged to Superwire Telecom.

106. On or about February 19, 2008, legal counsel to Plaintiff Superwire Telecom made a demand upon Defendants Ascendus and Smith. (See Exhibit B)

107. Ascendus never responded to the letter. Unable to accept responsibility and consistent with their scheme to defraud Plaintiffs, they simply continued to make statements that everything was "fine."

## VII.  GENERAL ALLEGATIONS

## 2008 INTERNAL INVESTIGATIONS

108. Plaintiff realleges and incorporates the allegations previously alleged and as set forth to this point.

109. Michael Heil was subsequently appointed to serve as a Director and CEO of Plaintiff Superwire.

110. In fulfilling his duties as director and CEO, Mr. Heil subsequently met or spoke with Defendants Smith and Taylor regarding the content of the demand letter from Mr. Truher.

111. Mr. Heil explained to the Defendants that the actions by Defendants in taking millions of dollars from Plaintiff Superwire Telecom has subjected Superwire to liability to Superwire Telecom in the amount of millions of dollars.  Smith and Taylor again reassured Mr. Heil that

everything was fine, no money was missing, everything would be accounted for, and that additional funding was coming from various of their world-wide resources, including but not limited to, from a leasing group called the Omni Group. None of this was true.

112. When Defendants refused to acknowledge responsibility for the missing millions of dollars that belonged to Plaintiff Superwire Telecom, or provide any additional information regarding their actions, Mr. Heil reported back to Mr. Truher.

113. Shockingly, on or about May 15, 2008, Jeffrey Roylance and Defendant Roger Taylor sent a letter to Mr. Heil purporting to act in authority as the Board of Directors of Plaintiff Superwire. In the five page letter Roylance (brother-in-law to Taylor) and Taylor pursued a course of trying to cover up their participation in a scheme of fraud and embezzlement by threatening Mr. Heil with veiled references to purported violation of state and federal criminal statutes.

114. Between October 2007 and May 2008, Smith, Taylor and Rolance have been involved in the issuance of over 7.4 million shares of Superwire's common stock.

115. Pursuant to the internal investigation conducted by Plaintiffs, all stock issuances have been effected without proper corporate authority and no accounting has been provided as to any stock sales or the $3 million from Time Warner.

## VIII. GENERAL ALLEGATIONS

## UNAUTHORIZED STOCK SALES

116. Plaintiff realleges and incorporates the allegations previously alleged and as set forth to this point.

117. In the process of conducting its internal investigation, Mr. Truher and Mr. Heil discovered that the Defendants have utilized Plaintiff Superwire to 1) pacify investors of theirs in

other deals, and 2) to raise capital for their own purposes, but under the auspices of Plaintiff Superwire, without the funds going to Plaintiffs and without providing an accounting of such stock sales.

118. Based upon statements and activities of Defendants Ascendus, Smith and Taylor, innocent investors believe they are entitled to ownership of Superwire securities when, in fact, they have no valid shareholder/issuer relationship. Numerous people have received Superwire securities, through activities of Defendants Ascendus, Smith, and Taylor, who are not entitled to those securities.

## IX. FIRST CLAIM FOR RELIEF

### (BREACH OF CONTRACT)
### (AGAINST DEFENDANT ASCENDUS)

119. Plaintiff repeats and realleges paragraphs 1 through 118 of its Complaint as though fully set forth at this point.

120. Defendant Ascendus has breached the Agreement it entered into with Plaintiff James Truher by not completing what it was required to do under the Agreement.

121. Defendant Ascendus has breached the Agreement by not rescinding the Agreement.

122. By not fulfilling the contractual terms and by not rescinding as promised, Defendant Ascendus has wrongfully influenced the management of Superwire and utilized Superwire to conduct and hide fraudulent activities.

123. As a direct and proximate cause of the breach of contract by Ascendus, Defendants Ascendus, Smith and Taylor have been able to wrongfully transfer Superwire securities, wrongfully issue Superwire securities, wrongfully sell Superwire securities, and wrongfully obtain funds

17

belonging to entities other than Superwire, yet under the auspices of Superwire.

124. As a direct, consequential and foreseeable result of the breach of the above-referenced Agreement, the Plaintiff Shareholders have suffered damages in an amount not less than Four and One Half Million Dollars ($4,5000,000) and special damages in the amount of Five Hundred Thousand Dollars ($500,000).

125. It has been necessary for Plaintiffs to retain the services of an attorney to prosecute this action and therefore Plaintiffs are entitled to reasonable attorney's fees and costs incurred herein.

## X. SECOND CAUSE OF ACTION

### (FRAUD AND MISREPRESENTATION)
### (AGAINST DEFENDANTS ASCENDUS, SMITH, AND TAYLOR)

126. Plaintiff repeats and realleges paragraphs 1 through 125 as though fully set forth at this point.

127. Defendants made numerous misrepresentations of a material fact to Plaintiffs.

128. The aforesaid representations were false and known to be false by Defendants Ascendus, Smith and Taylor at the time the same were made.

129. In truth and fact, Defendants did not intend to perform pursuant to the Agreement and the promises and statements so made in connection therewith, but rather intended to obtain domination and control over the Plaintiff Superwire for personal gain and without providing Plaintiff Superwire, or its related businesses, with the benefits promised in the Agreement.

130. In truth and fact, Defendants did not intend to perform, and did not perform, pursuant to the promises and statements made pursuant to fiduciary duties owed by Defendants.

131. In truth and fact, Defendants did not intend to perform, and did not perform, pursuant

18

to the promises and statements so made regarding $3 million that was NOT deposited into a Superwire account.

132. Upon information and belief Defendants Ascendus, Smith and Taylor, forced and intimidated corporate attorney Robert Alsop to perpetrate their fraud and embezzlement upon his client, the Plaintiffs Superwire Telecom and Plaintiff Superwire.

133. Defendants Ascendus, Smith and Taylor have made false and misleading statements in connection with 1) failing to prepare and preserve such corporate documents as was necessary to properly conduct business, 2) preparing and executing forged corporate documents, 3) transferring securities which were to be canceled, 4) participating in the preparation of one or more fraudulent legal opinions, 5) wrongfully removing restrictive legends from securities, 6) issuing securities without exemption from registration, 7) converting $3 million which did not belong to them, 8) failing to provide any meaningful or reliable accounting of any financial transactions which involve Plaintiff Superwire, 9) corresponding with Plaintiff Superwire's transfer agency, and 10) discussions with James Truher and Mike Heil regarding the financing of Superwire by Ascendus and other Defendants.

134. Defendants intended Plaintiffs to rely upon their knowingly false representations and statements.

135. Plaintiffs reasonably believed and relied, to their detriment, upon the aforesaid representations and statements of Defendants and was thereby fraudulently induced to: (i) enter into the Agreement; (ii) believe Defendants were properly maintaining the books and records of Superwire; (iii) believe Defendants were not engaging in fraudulent transactions, and allowing the $3 million Time Warner check to be deposited somewhere other than a Superwire Telecom bank

account.

136. By reason of the aforesaid false representations and deliberate actions of the above-named Defendants, the Plaintiffs have been defrauded.

137. As a direct, natural, and proximate result of the deceitful and fraudulent representations of Defendants acting in concert at various times and places, Plaintiffs have collectively suffered damages in an amount in excess of Four and one Half Million Dollars ($4,500,000).

138. As a direct, natural, and proximate result of the fraudulent and malicious acts of the Defendants named in this count Plaintiffs are entitled to an amount of punitive damages for an amount not less than Twenty Million Dollars ($20,000,000).

139. That is has been necessary for Plaintiffs to retain the services of an attorney to prosecute this action and therefore Plaintiff is entitled to reasonable attorney's fees and costs incurred herein.

## XI. THIRD CLAIM FOR RELIEF

### (CONVERSION)
### (AGAINST DEFENDANTS ASCENDUS, SMITH AND TAYLOR)

140. Plaintiff repeats and realleges paragraphs 1 through 139 as though fully set forth at this point.

141. Defendants caused the diversion of a $3 million check intended for Plaintiff Superwire Telecom such that the check was not used by Superwire Telecom.

142. Defendants have wrongfully engaged in the act of conversion by cashing the $3 million check.

143. By reason of the Defendants acts including, but not limited to, taking possession of the $3 million from Time Warner, the Plaintiffs Superwire Telecom has been wrongfully dispossessed

of its assets.

144. By reason of the Defendants acts as aforesaid and their domination, control, and conversion of Plaintiff Superwire Telecom's assets, Defendants have converted Plaintiff Superwire Telecom's assets to their personal use and benefit, all to Plaintiff Superwire Telecom's general damage in an amount in excess of Three Million Dollars ($3,000,000).

145. By reason of the Defendants acts as aforesaid and their domination, control, and conversion of Plaintiff Superwire Telecom's assets, Defendants have converted Plaintiff Superwire Telecom's assets to their personal use and benefit, and subjected Plaintiff Superwire to liability in an amount in excess of Three Million Dollars($3,000,000).

146. For the willful and malicious acts of Defendants as aforesaid, Plaintiffs are entitled to an award of punitive damages in an amount of Twenty Million Dollars ($20,000,000).

147. That is has been necessary for Plaintiffs to retain the services of an attorney to prosecute this action and therefore Plaintiff is entitled to reasonable attorney's fees and costs incurred herein.

148 - 149. Reserved.

## XII. FOURTH CLAIM FOR RELIEF

### (EMBEZZLEMENT AND THEFT)
### (AGAINST ALL DEFENDANTS ASCENDUS, SMITH AND TAYLOR)

150. Plaintiff repeats and realleges paragraphs 1 through 149 as though fully set forth at this point.

151. Defendants caused the diversion of a $3 million check intended for Plaintiff Superwire Telecom such that the check was not used by Superwire Telecom.

152. Defendants have wrongfully engaged in a the act of embezzlement by cashing the $3

21

million check and by not depositing said funds into a bank account of Plaintiff Superwire Telecom or Superwire.

153. By reason of the Defendants acts including, but not limited to, taking possession of the $3 million from Time Warner, the Plaintiffs Superwire Telecom has been wrongfully dispossessed of its assets.

154. By reason of the Defendants acts as aforesaid and their domination, control, and conversion of Plaintiff Superwire Telecom's assets, Defendants have embezzled Plaintiff Superwire Telecom's assets to their personal use and benefit, all to Plaintiff Superwire Telecom's general damage in an amount in excess of Three Million Dollars ($3,000,000).

155. By reason of the Defendants acts as aforesaid and their domination, control, and conversion of Plaintiff Superwire Telecom's assets, Defendants have embezzled Plaintiff Superwire Telecom's assets to their personal use and benefit, and subjected Plaintiff Superwire to liability in an amount in excess of $3,000,000.

156. As a direct, natural, and proximate result of the willful and malicious acts of Defendants as aforesaid, Plaintiffs Superwire Telecom and Superwire are entitled to an award of exemplary damages in an amount in excess of Twenty Million Dollars ($20,000,000).

157. That is has been necessary for Plaintiffs to retain the services of an attorney to prosecute this action and therefore Plaintiff is entitled to reasonable attorney's fees and costs incurred herein.

158-159. Reserved.

## XII. FIFTH CLAIM FOR RELIEF

## (BREACH OF FIDUCIARY DUTIES)
## (AGAINST DEFENDANTS ASCENDUS, SMITH AND TAYLOR)

160. Plaintiff repeats and realleges paragraphs 1 through 159 as though fully set forth at this point.

161. Pursuant to the Agreement between Defendant Ascendus and Plaintiff Truher, which involved the business and operations of Plaintiff Superwire, Defendant Ascendus and its members, agents and representatives, owed to Plaintiff Superwire a fiduciary duty to deal honestly with Plaintiffs at all times to not engage in any activity which is deceptive or harmful to Plaintiff Superwire.

162. By virtue of purporting to act as officers, directors, or authorized agents or representatives of Plaintiff Superwire, Defendants Smith and Taylor owed fiduciary duties including, but not limited to, duty of care in handling all transactions properly, and duty to deal honestly with Plaintiff Superwire at all times and to not engage in any activity which is deceptive or harmful to Plaintiff Superwire.

163. Defendants Ascendus, Smith and Taylor have breached fiduciary duties to Plaintiff Superwire by 1) failing to prepare and preserve such corporate documents as was necessary to properly conduct business, 2) preparing and executing forged corporate documents, 3) transferring securities which were to be canceled, 4) participating in the preparation of one or more fraudulent legal opinions, 5) wrongfully removing restrictive legends from securities, 6) issuing securities without exemption from registration, 7) converting $3 million which did not belong to them, 8) failing to provide any meaningful or reliable accounting of any financial transactions which involve Plaintiff Superwire, 9) making false statements and representations to Superwire's transfer agency, 10) making false statements and representations to James Truher and Mike Heil regarding the financing of Superwire by Ascendus and other Defendants.

164.  By reason of the Defendants' acts as described above, Plaintiff Superwire is entitled to damages equal to the liability Defendants have caused, in an amount in excess of <u>Three Million Dollars($3,000,000)</u>.

165.  For the willful and malicious acts of Defendants as described above, Plaintiff Superwire is entitled to an award of punitive damages in an amount of <u>Twenty Million Dollars ($20,000,000)</u>.

166-169.  Reserved.

## XIII.  SIXTH CLAIM FOR RELIEF

### (ACCOUNTING)
### (AGAINST DEFENDANTS ASCENDUS, SMITH AND TAYLOR)

170.  Plaintiff repeats and realleges paragraphs 1 through 169 as though fully set forth at this point.

172.  Defendants Ascendus, Smith and Taylor have engaged in, and conducted, transactions involving Plaintiffs Superwire and Superwire Telecom.

173.  Defendants Ascendus, Smith and Taylor have not provided any meaningful or reliable accounting of their transactions involving Plaintiffs Superwire and Superwire Telecom.

174.  Plaintiffs Superwire and Superwire Telecom are entitled to an accounting from Defendants Ascendus, Smith and Taylor.

175.  Plaintiffs Superwire and Superwire Telecom have had to retain legal counsel to obtain an accounting from Defendants and is entitled to reasonable attorneys fees.

176-179.  Reserved.

## XIV.  SEVENTH CLAIM FOR RELIEF

### (INJUNCTIVE RELIEF - AGAINST SALE OF SECURITIES)
### (AGAINST DEFENDANTS ASCENDUS, SMITH AND TAYLOR)

180.    Plaintiff repeats and realleges paragraphs 1 through 179 of its Complaint as though fully set forth at this point.

181.    Defendants Ascendus, Smith and Taylor, have wrongfully engaged in the sale of securities of Plaintiffs Superwire and Superwire Telecom in violation of securities laws.

182.    Irreparable harm will result to Plaintiffs and their stockholders if the Defendants are allowed to fraudulently sell and distribute Superwire and Superwire Telecom securities.

183.    Plaintiffs request this Court to enter a preliminary and permanent injunction preventing the Defendants from selling or transferring to any other person or entity, any securities of Superwire, Inc. that they presently hold, or claim to hold or have authority to distribute, so as to preserve the status quo until the time of trial or hearing on this matter.

184.    It has been necessary for Plaintiff to retain the services of an attorney to prosecute this action and therefore Plaintiff is entitled to reasonable attorney's fees and costs incurred herein.

185-189.   Reserved.

### XV. EIGHTH CLAIM FOR RELIEF

### (INJUNCTIVE RELIEF - AGAINST DISPOSITION OF SECURITIES SALE PROCEEDS)
### (AGAINST DEFENDANTS ASCENDUS, SMITH AND TAYLOR)

190.    Plaintiff repeats and realleges paragraphs 1 through 189 of its Complaint as though fully set forth at this point.

191.    As a direct, natural, and proximate result of Defendants' acts as aforesaid, the Plaintiffs have been deprived of property and have had some of its property sold and/or converted which has resulted in funds flowing to Defendants which do not belong to them.

192.    Irreparable harm will result to the Plaintiffs if the Defendants are allowed to further transfer or hide proceeds from the sale of Plaintiffs' securities.

193.    Plaintiffs request this Court to enter a preliminary and permanent injunction preventing the Defendants from transferring or hiding the proceeds for the sale of any Superwire or Superwire Telecom securities.

194.    That it has been necessary for Plaintiffs to retain the services of an attorney to prosecute this action and therefore Plaintiff is entitled to reasonable attorney's fees and costs incurred herein.

195-199.   Reserved

## XVI.  NINTH CLAIM FOR RELIEF

## (INJUNCTIVE RELIEF - AGAINST DISPOSITION OF TIME WARNER PROCEEDS) (AGAINST DEFENDANTS ASCENDUS, SMITH, AND TAYLOR)

200.    Plaintiff repeats and realleges paragraphs 1 through 199 of its Complaint as though fully set forth at this point.

201.    As a direct, natural, and proximate result of Defendants' acts as aforesaid, the Plaintiff Superwire and Plaintiff Superwire Telecom have had $3 million converted, embezzled and stolen which has resulted in funds flowing to Defendants which do not belong to them.

202.    Irreparable harm will result to the Plaintiffs if the Defendants are allowed to further transfer or hide the converted, embezzled and stolen funds from the $3 million Time Warner check.

203.    The Plaintiff requests this Court to enter a preliminary and permanent injunction preventing the Defendants from transferring or hiding the proceeds from the sale of any shares they received from Plaintiff Shareholders.

204. That it has been necessary for Plaintiffs to retain the services of an attorney to prosecute this action and therefore Plaintiffs are entitled to reasonable attorney's fees and costs incurred herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs herein, expressly reserving the right to amend this Complaint to include all items and amounts of damage not yet specifically ascertained, prays for relief against Defendants as follows:

1. Upon the First Claim for Relief - Breach of Contract:

(a) General Damages in an amount in excess of Four and One Half Million Dollars ($4,500,000) plus accruing interest.

(b) Special Damages in an amount in excess of Five Hundred Thousand Dollars ($500,000).

(c) Costs of suit and reasonable attorney's fees incurred herein.

(d) Such other and further relief as the Court deems just and proper.

2. Upon the Second Claim for Relief- Fraud:

(a) General Damages in an amount in excess of Four and One Half Million Dollars ($4,500,000)

(b) Punitive Damages in the amount of Twenty Million Dollars (20,000,000).

(c) Costs of suit and reasonable attorney's fees incurred herein.

(d) Such other and further relief as the Court deems just and proper.

3. Upon the Third Claim for Relief - Conversion:

(a) General Damages in an amount in excess of Three Million Dollars ($3,000,000)

(b) Punitive Damages in the amount of Twenty Million Dollars ($20,000,000).

27

    (c)     Costs of suit and reasonable attorney's fees incurred herein.

    (d)    Such other and further relief as the Court deems just and proper.

4.    Upon the Fourth Claim for Relief - Embezzlement and Theft:

    (a)    General Damages in an amount in excess of Three Million Dollars ($3,000,000)

    (b)    Punitive Damages in amount Twenty Million Dollars ($20,000,000)

    (c)     Costs of suit and reasonable attorney's fees incurred herein.

    (d)    Such other and further relief as the Court deems just and proper.

5.    Upon the Fifth Claim For Relief - Breach of Fiduciary Duties:

    (a)    General Damages in an amount in excess of Three Million Dollars ($3,000,000)

    (b)    Punitive Damages in the amount of Twenty Million Dollars ($20,000,000)

    (c)     Costs of suit and reasonable attorney's fees incurred herein.

    (d)    Such other and further relief as the Court deems just and proper.

6.    Upon the Sixth Claim For Relief - Accounting:

    (a)    An order from the Court requiring all Defendants to identify any and all funds and proceeds received in connection with Superwire and Superwire Telecom stocks or transactions.

    (b)    Costs of suit and reasonable attorney's fees incurred herein.

    (c)     Such other and further relief as the Court deems just and proper.

7.    Upon the Seventh Claim For Relief - Injunctive Relief:

    (a)    A preliminary and permanent injunction preventing the transfer or sale or concealment, by any of the Defendants, of any Superwire or Superwire Telecom securities.

    (b)    Costs of suit and reasonable attorney's fees incurred herein.

    (c)     Such other and further relief as the Court deems just and proper.

8.   Upon the Eighth ClaimsFor Relief - Injunctive Relief:

   (a)   A preliminary and permanent injunction preventing the transfer or concealment, by any of the Defendants, of the proceeds from the sale of any Superwire or Superwire Telecom securities.

   (b)   Costs of suit and reasonable attorney's fees incurred herein.

   (c)   Such other and further relief as the Court deems just and proper.

9.   Upon the Ninth Claim For Relief - Injunctive Relief:

   (a)   A preliminary and permanent injunction preventing the transfer or concealment, by any of the Defendants, of the $3 million in proceeds from the Time Warner check made out to Plaintiff Superwire Telecom, Inc.

   (b)   Costs of suit and reasonable attorney's fees incurred herein.

   (c)   Such other and further relief as the Court deems just and proper.

Respectfully submitted this 27th day of May, 2008.

By: _____
   NATHAN W. DRAGE, ESQ.
   Attorney for Plaintiffs